J-A24010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF C.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.L.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 343 WDA 2020 |

Appeal from the Decree Entered February 5, 2020
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
O.A. No. 48 of 2017

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 28, 2020**

B.L.M. ("Mother") appeals from the February 5, 2020 decree, which granted the petition filed by C.M.M., III ("Maternal Grandfather") and D.J.M. ("Maternal Grandmother") (collectively "Maternal Grandparents") to involuntarily terminate her parental rights to her minor son, C.M.M. ("Child") (born in May of 2011), pursuant to Sections 2511(a)(1), (2), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1]  Counsel seeks permission to withdraw from further representation pursuant to **Anders v. California**, 386 A.2d 738 (Pa. 1967).  Upon review, we find that counsel's **Anders** brief satisfies the requirements set forth in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and that there are no non-frivolous claims that Mother

---

[1] Mother identified two potential biological fathers of Child, S.M. ("Natural Father") and M.H. ("Putative Father").  The parental rights of both Natural Father and Putative Father were involuntarily terminated by separate decrees on the same date.  Neither is a party to this appeal.

can raise herein. Accordingly, we grant counsel's petition to withdraw and affirm the orphans' court's termination decree.

The orphans' court provided the following summary of the procedural history of this matter in its Pa.R.A.P. 1925(a) opinion:

> [Maternal Grandparents] … filed the instant Petition for Involuntary Termination of Parental Rights of … Mother on or about September 18, 2017. [Maternal Grandparents] further filed a Petition for Involuntary Termination of Parental Rights of Natural Father…. Due to numerous issues surrounding the Petition for Involuntary Termination of Parental Rights of Natural Father … and in light of [Mother's] providing the name of the possible natural father of [Child] on or about August 1, 2019, which naming necessitated further filings and notices in this matter, a hearing on [Maternal Grandparents'] … Petition for Involuntary Termination of Parental Rights of … [Mother] was not held until February 5, 2020.[2]
>
> On February 5, 2020, at the time set for said hearing, [Mother] did not appear, despite being duly notified of the date, time, and place set for said hearing. Her counsel … appeared on her behalf, and verified that [Mother] had been duly notified, and was fully aware, that the evidentiary hearing regarding the termination of [Mother's] parental rights was to be held on this

---

[2] Maternal Grandparents originally filed a Petition for Involuntary Termination of Parental Rights of Father on September 18, 2017, which named M.H. as the natural father of Child. M.H. was subsequently excluded as the biological father of Child, after participating in genetic testing. Accordingly, the orphans' court dismissed the petition relative to M.H., by order of court dated February 8, 2019. On March 7, 2019, Maternal Grandparents filed a Petition for Involuntary Termination of Parental Rights of Putative Father, which named M.H. as the putative father, as well as a Petition for Involuntary Termination of Parental Rights of Unknown Father. The orphans' court was informed at a August 1, 2019 status conference that the identity of the natural father may be known. On December 2, 2019, Maternal Grandparents proceeded with filing a Petition for Involuntary Termination of Parental Rights of Father, naming S.M. as the natural father. A hearing was scheduled for February 5, 2020, regarding the pending petitions against Mother, Putative Father, and Natural Father.

date, at said time and place. The evidentiary hearing continued without the presence of [Mother.]

Orphans' Court Opinion ("OCO"), 3/10/20, at 1-2.

On February 5, 2020, the orphans' court entered its order terminating Mother's parental rights to Child, pursuant to Sections 2511(a)(1), (2), and (b) of the Adoption Act. Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i). She now presents the following issues for our review, via counsel's **Anders** brief:

1. Whether the evidence in the record is inadequate for the [orphans'] court to have concluded, by clear and convincing evidence, that grounds for involuntary termination of parental rights existed pursuant to 23 Pa.C.S.[] §§ 2511(a)(1), (2)[?]

2. Whether the evidence in the record is inadequate for the [orphans'] court to have concluded that termination of parental rights was in the best interests of … [C]hild, as required by 23 Pa.C.S.[] § 2511(b)[?]

**Anders** Brief at 4.

"When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

Court-appointed counsel who seeks to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;

> (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit" letter to amicus curiae brief; and (3) furnish a copy of the brief to the [appellant] and advise the [appellant] of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.
>
> **Commonwealth v. Miller**, 715 A.2d 1203 (Pa. Super. 1998) (citation omitted).

**Rojas**, 874 A.2d at 639. Mother's counsel has complied with these requirements. Counsel petitioned for leave to withdraw, and filed a brief satisfying the requirements of **Anders**, as discussed, *infra*. Counsel also provided a copy of the brief to Mother, and submitted proof that she advised Mother of her right to retain new counsel, proceed *pro se*, and/or to raise new points not addressed in the **Anders** brief.

Our Supreme Court has held, in addition, that counsel must explain the reasons underlying his assessment of the appellant's case and his conclusion that the claims are frivolous. Thus, counsel's **Anders** brief must satisfy the following criteria before we may consider the merits of the underlying appeal:

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Upon review of the **Anders** brief submitted by Appellant's counsel, we find it complies with the technical requirements of **Santiago**. Counsel's

- 4 -

*Anders* brief (1) provides a summary of the procedural history and facts of this case; (2) directs our attention, when applicable, to the portions of the record that ostensibly supports Mother's claim of error; (3) concludes that Mother's claim is frivolous; and (4) does so by citation to the record and appropriate/applicable legal authorities. Thus, we now examine whether Mother's claim is, indeed, frivolous. We also must "conduct a simple review of the record to ascertain if there appears on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If

competent evidence supports the trial court's findings, we will affirm even if

the record could also support the opposite result. *In re Adoption of T.B.B.*,

835 A.2d 387, 394 (Pa. Super. 2003).

Mother's issues pertain to Section 2511 of the Adoption Act, which

governs the termination of parental rights and requires a bifurcated analysis.

In addressing her claims, we are guided by the following:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511,

other citations omitted). The burden is upon the petitioner to prove by clear

and convincing evidence that the asserted grounds for seeking the termination

of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

- 6 -

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id.*** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id.*** at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

Instantly, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under Section 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We first address whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to section 2511(a)(1). In *In re C.M.S.*, 832 A.2d 457 (Pa. Super. 2003), we noted:

To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*Id.* at 461 (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). The *C.M.S.* Court further acknowledged the following statement by our Supreme Court:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life[.")

***Id.*** at 462 (quoting ***In re Burns***, 379 A.2d 535, 540 (Pa. 1977)).

Instantly, the orphans' court found that Mother "evidenced a settled purpose of relinquishing her parental claim to … [Child] … and, has also refused and failed to perform her parental duties associated with … [Child]." Termination Decree, 2/5/20, at 2. In support of its decision, the orphans' court opined:

> [Child] was born [in] May [of] 2011, and is eight (8) years old. [Child] has resided with [Maternal Grandparents] since he was released from the NICU, being just shy of six weeks old, and [Maternal Grandparents] have had custody of him since August 19, 2011. [Child] has never lived in any other home, and [Mother] has never had physical custody of [him]. [Mother] lived with [Maternal Grandparents] and [Child] until approximately five (5) years ago, when [Child] was about three (3) years old. At that time, [Maternal Grandparents] moved from Allegheny County, Pennsylvania, to their new home in Valencia, Butler County, Pennsylvania. [They] invited [Mother] to move with them, but [she] declined; [Maternal Grandparents] subsequently contacted a realtor to assist [Mother] with finding her own apartment.

> [Maternal Grandmother] testified credibly at the evidentiary hearing. [She] testified that she and [Mother] do not speak much, and when they do, it is usually with regard to one of [Mother's] bills. [Mother] has inquired about [Child] a handful of times, but it is very rare that she does, and the inquiry is usually an add-on to the main purpose of the call. The last time [Mother] spoke with [Child] on the telephone was a few months ago; she and [Child] spoke approximately three (3) to five (5) minutes total. Additionally, [Mother] does [not] request any visitation with … [C]hild. [Maternal Grandmother] would suggest visits with [Mother] and [Child] and offer to pick up [Mother] after work and otherwise provide transportation; however, the only time [Mother] accepted the offer was approximately [five (5)] years ago. [Mother] did come to an Easter gathering about two [(2)] years ago and dyed eggs with [Child]; however, … after informing

- 9 -

[Child] she would play [outside] with him after she changed her clothes, she instead crawled into an upstairs bed and fell asleep. During another Christmas, [Maternal Grandparents] invited [Mother] to stay over on Christmas Eve and to watch [Child] open presents on Christmas Day. When [they] refused to allow [Mother's] male friend to also stay, due to well-founded safety concerns, [Mother] chose to stay with her boyfriend rather than spend Christmas with [Child]. [Mother] last saw her son this past Christmas Eve. [Maternal Grandparents] have never denied any request by [Mother] to see [Child]; however, they ceased making affirmative overtures themselves because [Mother] always declined the invitations.

[Mother] has never paid child support for [Child]; [he] has been financially supported his entire life by [Maternal Grandparents]. [Mother] has not sent, on a regular basis, cards and gifts to [Child]. Additionally, [Maternal Grandmother] testified that [Mother] suffers from mental health issues, and is prescribed both Methadone and Klonopin. She further testified that [Mother] has overdosed numerous times, though the dates of said overdoses were not provided.

Finally, [Maternal Grandmother] testified that if the [c]ourt were to terminate [Mother's] parental rights, she would agree to [Child] and [Mother] having therapeutic and/or supervised visits, that [Mother] would still be invited to family events, and that [Maternal Grandmother] would keep [Mother] informed of [Child's] major life events and achievements.

[Maternal Grandfather] also testified credibly, and affirmed that [Maternal Grandparents] have never denied [Mother] the opportunity to see [Child]; that they facilitated any visits by offering [Mother] transportation to said visits. He also affirmed that, should [Mother's] parental rights be terminated, he was agreeable to keeping [Mother] informed of the health and major life events of [Child]. He testified that [Maternal Grandparents] have always desired that [Mother] be part of [Child's] life, but that [Mother] did not want to be part of … [C]hild's life. He further testified that [Mother] has never filed a [p]etition seeking custody of [Child]. Finally, he testified that [Mother] has [Maternal Grandparents'] cell phone and home telephone numbers, and is aware of [their] address; he testified that neither of [them] have ever blocked their telephone numbers or hidden their whereabouts from [Mother].

- 10 -

Thus, the credible and uncontradicted testimony of [Maternal Grandparents] amply and convincingly demonstrated, by clear and convincing evidence, [Mother's] settled purpose of relinquishing her parental claim to [Child], and showed her failure to perform her parental duties for at least the six (6) months preceding the filing of the [termination petition], such as to satisfy the statutory grounds for termination set forth in 23 Pa.C.S.[] § 2511(a). The evidence demonstrated without doubt that … [C]hild's present and future needs for essential parental care were not being met, and would not in the future be met, by [Mother]; rather, they have been, are currently, and in the future will be met by [Maternal Grandparents].

OCO at 4-7 (citations to record omitted). We deem the orphans' court's determination under Section 2511(a)(1) to be well-supported by the record, and we discern no abuse of discretion.

As for its analysis under Section 2511(b), the orphans' court found:

The record, as delineated above, affirmatively and demonstrably substantiates that [Child's] needs for love, comfort, security, and stability has, his entire life, and especially throughout the past five (5) years of his life, been provided to him almost exclusively by [Maternal Grandparents], and that little love, comfort, security, and stability, if any, has been provided to him by [Mother]. The evidence supports the conclusion that [Mother] and [Child] had little emotional bond, and that [Child] would be benefited, not harmed by the severance of [Mother's] parental rights. Thus, … terminating the parental rights of [Mother] best serves the developmental, physical and emotional needs and welfare of [Child].

OCO at 8-9. As there is competent evidence in the record to support the orphans' court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to Section 2511(b).

Our review of the record reveals no other potential, non-frivolous issues that Mother could raise on appeal. As such, we agree with counsel that a

- 11 -

direct appeal in this case is wholly frivolous. Accordingly, we grant counsel's petition to withdraw, and we affirm the decree terminating Mother's parental rights to Child, pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2020